# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3434

_____

Andover Healthcare, Inc.,

*Petitioner - Appellant*,

v.

3M Company,

*Respondent - Appellee*.

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 22, 2015
Filed: March 31, 2016

_____

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Andover Healthcare, Inc., appeals an order of the district court[1] denying Andover's petition under 28 U.S.C. § 1782 for discovery to be used in a patent-

_____

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

infringement suit in Germany. We conclude that the district court did not abuse its discretion, and we therefore affirm the order.

I.

Andover Healthcare, Inc., and 3M Company both make cohesive, latex-free bandages. Andover holds patents on its bandages in both the United States and Europe. In 2013, Andover filed a patent-infringement suit in the District of Delaware, alleging that 3M had infringed Andover's patent with its line of Coban bandages. Andover also sued 3M in Germany, asserting that 3M violated Andover's related European patent. This appeal concerns an effort to discover information for use in the German suit.

Claim one of Andover's European patent describes "a cohesive product comprising . . . an inherently crystalline elastomer and at least one tackifying agent in an amount effective to disrupt the crystalline structure of the elastomer and maintain the elastomer in a partial polycrystalline state." In support of its defense in the German case, 3M submitted an expert report stating that 3M's raw "elastomer materials are not present in a crystalline . . . state." The report further observed that "[s]ince no crystallinity could be detected in the elastomer right from the beginning, it can therefore not be disrupted by specifically adding tackifiers." 3M argued before the German court that because its polychloroprene elastomer material is not crystalline or maintained in a partial polycrystalline state, its products did not infringe Andover's European patent.

Andover believes that 3M's test results cannot be correct and seeks to conduct its own testing on 3M's polychloroprene and 3M's polychloroprene and tackifying agent mixture. 3M has refused, however, to reveal to Andover its specific type of polychloroprene or its formula for making the bandages. 3M asserts that this information implicates highly sensitive trade secrets.

3M did disclose the disputed information, under a protective order, in the Delaware infringement suit. Andover first sought permission from the Delaware court to use the information in the parallel German proceeding. The Delaware court denied Andover's request, citing the sensitivity of the information and the availability of other mechanisms in Germany and in the United States to obtain the information. Andover then sought the same discovery from the German court, but the German court has not yet ruled on the request. While pursuing these discovery requests, Andover also conducted testing on 3M's commercially available bandages, but Andover asserts that these tests on the final product are insufficient to make the necessary comparison with 3M's test results on its own raw materials.

In a third attempt to obtain the desired information for use in Germany, Andover petitioned the district court in Minnesota for discovery under 28 U.S.C. § 1782. Andover made two specific requests. First, Andover sought "[d]ocuments sufficient to show the ingredients in, formulation of, and method of making the products accused of infringement in Germany." Second, Andover requested "[d]ocuments referencing the crystallization or crystallinity properties of the polychloroprene used in the products accused of infringement." The district court, affirming the order of a magistrate judge, denied Andover's petition for discovery. Andover appeals, and we review the district court's decision for abuse of discretion. *Gov't of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 343 (8th Cir. 2012).

II.

Section 1782 provides that a district court "may order [a person] . . . to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). The district court's authority to order production is not limited "to materials that could be discovered in the foreign jurisdiction if the materials were located there." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 260 (2004). The Supreme Court has issued no supervisory rules governing

-3-

§ 1782(a), but has noted several factors that bear consideration in making the determination whether to grant an application. *Id*. at 264-65.

The district court considered Andover's petition in light of the considerations identified by the Supreme Court and concluded that three considerations weighed against an order of production. Andover disputes the district court's analysis and asserts that all of the pertinent factors favor an order of production.

The district court first observed that 3M is a party to the parallel German infringement suit and that the German court had said it would grant Andover's discovery request if necessary to resolve the case. The district court's view that this factor weighed against the petition is well grounded in the Supreme Court's guidance from *Intel*: "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. *A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence*." *Id*. at 264 (emphasis added).

Andover contends that whether the German court will order discovery is uncertain, especially if the standard is one of "necessity," so 3M's status as a party in the German litigation should not weigh against an order for discovery under § 1782(a). We see no flaw in the district court's approach. The court's finding that the German court will order discovery from 3M if necessary was based on a declaration of German counsel for 3M, and the presence of conflicting evidence does not make the finding clearly erroneous. It was reasonable on this record for the district court to presume that the German court will examine first whether the case can be resolved without compelling discovery of sensitive trade secrets, but will exercise jurisdiction to order disclosure if the information is essential to making an informed decision. That this approach is more circumspect than American discovery does not dictate an order for discovery under § 1782(a). When a foreign court "can

itself order" production, *Intel* teaches that the district court properly may deem the need for § 1782(a) discovery less "apparent." *Id*.

The district court also determined that the "highly sensitive nature of the requested discovery, and the lack of certainty that its confidentiality can be maintained," weighed heavily against ordering discovery. This reasoning aligns with the Court's observation in *Intel* that "unduly intrusive or burdensome requests may be rejected or trimmed." *Id*. at 265. The district court cited evidence that disclosure of 3M's trade secrets, even if limited to one ingredient of the disputed product, would irreparably harm the company. The court also relied on a declaration from German counsel that there is no firm procedure in Germany to prevent disclosure to in-house counsel for Andover, that interested third parties may have access to the full case file, and that German courts do not frequently grant requests to exclude confidential information from their decisions. Andover suggests that a protective order could alleviate these concerns, but any order would have to permit disclosure to the German court at a minimum, thus leaving 3M's trade secrets at the mercy of German procedures that are unfamiliar to this court. Especially when 3M is a party to the German proceeding, where the German court can determine the need for discovery of the trade secrets and its ability to protect them, the district court properly weighed the sensitive nature of the information sought against an order for discovery.

As a third factor counseling against the discovery, the district court cited Andover's apparent attempt to avoid or preempt an unfavorable decision on discovery by the German court. While the Supreme Court in *Intel* rejected a foreign discoverability requirement, the Court allowed that considerations of comity may guide the exercise of discretion in a particular case. *Id*. at 261. Andover, however, disputes the district court's characterization of its intent. The company maintains—citing an uncontradicted declaration of counsel that the evidence sought would be "fully admissible" in Germany—that German courts are very receptive to the use of information obtained in the United States.

-5-

We are not convinced that a discovery order would be unwelcome by the German court or would implicate the Supreme Court's concern about efforts to "circumvent foreign proof-gathering restrictions" of the type that prohibit the use of certain materials. *Intel*, 542 U.S. at 265; *see Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015). But even if these considerations do not militate against a discovery order, they fail to weigh heavily enough in favor of discovery to overcome the principal factors supporting the district court's denial of Andover's petition. The German court is in a position to order the requested discovery if the information is needed, and the German court is best positioned to assess whether any disclosure can be accomplished without jeopardizing the sensitive trade secrets involved.

For these reasons, the district court did not abuse its discretion in denying Andover's § 1782 petition. The order of October 6, 2014, is affirmed.

_____