**In re Application of David GODFREY and Bruce Misamore for an order to conduct discovery for use in a foreign proceeding.**

No. M–19–99.

United States District Court, S.D. New York.

Nov. 30, 2007.

*OPINION AND ORDER*

JED S. RAKOFF, District Judge.

On October 1, 2007, petitioners David Godfrey and Bruce Misamore filed, *ex parte,* an Application for Discovery in Aid of a Foreign Proceeding under 28 U.S.C. § 1782(a). Specifically, they requested (1) leave to serve subpoenas *duces tecum* on respondents VR Capital Group ("VR Capital"), Renaissance Capital LLC–Financial Consultant ("Renaissance Capital"), Robert Dietz, Richard Foresman, and Stephen Patrick Lynch; (2) leave to serve subpoenas *ad testificandum* on same; (3) a court order requiring VR Capital and Renaissance Capital to provide a representative designated to testify to matters known to the organizations and requiring Richard Dietz, Robert Foresman, and Stephen Patrick Lynch to be deposed within 21 days; and (4) leave to serve subpoenas for depositions at future dates on knowledgeable individuals and entities without further application to the Court. The *ex parte* application was granted by Judge Victor Marrero, then sitting as judge in the Miscellaneous Part of the Court ("Part I"), and the subpoenas then issued.

On October 15, 2007, all five respondents-Foresman, Lynch, Deitz, Renaissance Capital and VR Capital-filed a motion to quash the subpoenas as improperly issued. Petitioners filed a memorandum of law in opposition to the motion to quash on October 17, 2007, and the undersigned, sitting as Part I Judge, heard oral argument on the matter on October 23, 2007. For the reasons explained below, the motion to quash the subpoenas is hereby granted.

▮ 28 U.S.C. § 1782(a) provides: "The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." There are thus three threshold requirements for compelling discovery under § 1782:(1) the person from whom discovery is sought must "reside" or be "found" in the district; (2) the discovery must be for use in a proceeding in a foreign tribunal; and (3) the applicant must be an "interested person." *See In re Edelman,* 295 F.3d 171, 175–76 (2d Cir.2002). If all three requirements are met, the deci-

sion to grant the request then rests within the discretion of the district court. *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 260, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004). In exercising such discretion, courts should consider, *inter alia,* "(1) Whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid; (2) The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) Whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) Whether the subpoena contains unduly intrusive or burdensome requests." *In re Microsoft Corp.,* 428 F.Supp.2d 188, 192–93 (S.D.N.Y.2006).

█ In their initial *ex parte* application to Judge Marrero, petitioners claimed that the first threshold requirement for discovery under § 1782(a) was met because all respondents were "found" in this district. According to the declaration submitted by petitioner's counsel, Robert F. Serio, Esq., VR Capital had an office at 136 Madison Avenue, Renaissance Capital had an office at 780 Third Avenue and was registered to do business in New York, Richard Deitz was an executive with VR Capital and was found in this district from time to time, Robert Foresman was an executive with Renaissance Capital and was "regularly in the Southern District of New York," and Stephen Patrick Lynch listed an address in the Southern District in the underlying Dutch proceeding and was "from time to time, found in the Southern District of New York (including as recently as the weekend of September 1, 2007)." *See* Declaration of Robert F. Serio ("Serio Decl.") dated October 1, 2007, ¶ 3.

However, now that respondents have had an opportunity to be heard, it is clear that petitioners, who have the burden of proof, have not in fact adequately shown that any respondent except Richard Deitz is "found" within this district within the meaning of § 1782(a), or that any respondent at all "resides" here. *See In re Kolomoisky,* 2006 WL 2404332 (S.D.N.Y.2006) at *3 (burden of proof on petitioner). Specifically, as to each respondent except Dietz, respondents have provided specific facts that cast in grave doubt petitioners' prior assertions that all respondents are "found" here and that render those assertions insufficient to meet petitioners' burden.

Thus, respondent Lynch avers that he has resided in Moscow since 1999, *see* Declaration of Stephen Patrick Lynch in Support of Respondents' Motion to Quash Subpoenas ("Lynch Decl.") dated October 11, 2007, Exhibit 2 to Declaration of Robert H. Pees in Support of Respondents' Motion to Quash Subpoenas ("Pees Decl.") dated October 15, 2007; and that prior to that time he lived in Philadelphia, Pennsylvania, Almaty, Kazakhstan, and Nizhny Novogorod, Russia. *Id.* ¶ 2. In the past year, he has visited New York just three times and for personal reasons. *Id.* ¶ 3. The subpoena at issue in this case was delivered to Lynch's mother's address and left with her. *Id.* ¶ 7. But while it is true that Lynch's mother lives in North Salem, New York (i.e., within this district) and that, "given the unreliability of the Russian postal system," *id.* ¶ 6, Lynch has, at times, including in the Dutch proceeding relevant to this application, listed his mother's address as his mailing address, *id.* ¶¶ 5–6, Lynch himself has not lived in North Salem since high school. *Id.* ¶ 5.

Similarly, respondent Foresman avers that he has resided in Moscow for the past eight years. Declaration of Robert Fores-

man in Support of Respondents' Motion to Quash Subpoenas ("Foresman Decl.") dated October 12, 2007, Exhibit 1 to Pees Decl., ¶ 2. Prior to that time, he lived in Kiev and Washington, D.C. *Id.* He owns real property in Auburn, New York, which is not part of the Southern District. *Id.* ¶ 3. Foresman spent only one day in Manhattan in 2007. *Id.* ¶ 4.

Subpoenas directed at Foresman, as well as at respondent Renaissance Capital, a Russian investment bank, were delivered to the offices of RenCap Securities, Inc. ("RenCap Securities"), where an office manager purportedly stated that he had authority to accept subpoenas on behalf of both Renaissance Capital and Robert Foresman. *See* Affidavits of Service, Exhibits H and I to Declaration of Anne M. Coyle ("Coyle Decl.") dated October 19, 2007. Both Foresman and Renaissance Capital aver, however, that this statement, if made, was patently beyond the office manager's authority. Supplemental Declaration of Robert Foresman in Further Support of Respondents' Motion to Quash Subpoenas ("Supplemental Foresman Decl.") dated October 22, 2007, Exhibit 2 to Supplemental Declaration of Robert H. Pees ("Supplemental Pees Decl.") dated October 22, 2007, ¶ 7. RenCap Securities is a Delaware corporation registered to conduct business in the State of New York. Declaration of Gretchen King ("King Decl.") dated October 18, 2007, Exhibit D to Coyle Decl., ¶¶ 3–4. While RenCap Securities and Renaissance Capital are affiliated, they are separate legal entities with separate employees and separate functions. Supplemental Foresman Decl. ¶ 2. RenCap Securities is neither a department nor a division of Respondent Renaissance Capital. *Id.* It is not financially dependent on Renaissance Capital and there is no overlap of corporate personnel. *Id.* In addition, because of a so-called "Chinese Wall" between sales and trading operations and investment banking operations,

RenCap Securities employees do not have physical or electronic access to the documents that are the subject of the subpoenas (and that are themselves located in Russia). *Id.* ¶¶ 4–6. Robert Foresman is an officer of Renaissance Capital but not of RenCap Securities. Foresman Decl. ¶ 1; Supplemental Foresman Decl. ¶ 2.

Respondent VR Capital Group ("VR Capital") is an investment management firm based in Moscow, with additional offices in Dubai and Buenos Aires. *See* Declaration of Richard Deitz in Support of Respondent's Motion to Quash Subpoenas ("Deitz Decl.") dated October 11, 2007, Exhibit 3 to Pees Decl., ¶¶ 1–2. With the exception of Gustavo Palazzi, an Argentine national who works for VR Capital's Buenos Aires office and has temporarily relocated to Westchester County to be near his wife for medical reasons, VR Capital and its affiliates have no personnel in the Southern District. *Id.* ¶ 4; Supplemental Declaration of Richard Deitz in Further Support of Respondents' Motion to Quash Subpoenas ("Supplemental Deitz Decl.") dated October 22, 2007, Exhibit 1 to Supplemental Pees Decl., ¶ 18. Respondent Richard Deitz, the president of VR Capital, is friends with the managing directors of a company called Aristeia Capital LLC ("Aristeia"), which has offices at 136 Madison Avenue, where the subpoenas for Dietz and VR Capital were served. The directors occasionally allow Deitz to borrow an office when he is in New York, and they allow him to use their office as a mailing address "in light of the vagaries of the Russian postal system," but that is all. Deitz Decl. ¶ 5. Therefore, 136 Madison Avenue is listed as an address in Deitz's email signature line and his name is included in the Aristeia telephone directory. Aristeia then regularly forwards mail to VR Capital in Moscow. Supplemental Deitz Decl. ¶ 15. VR Capital does not itself own or lease the premises at 136

Madison Avenue or any other location in New York. Deitz Decl. ¶ 5.

Petitioners do not materially contest most of the aforementioned recitations by respondents, but rather argue that "the Second Circuit has held that service within the district is equivalent to being 'found' here for purposes of § 1782(a)" and then spend a large part of their brief attempting to explain how respondents were "served" with subpoenas in a manner that would subject them to personal jurisdiction under to New York State law. Memorandum of Law in Opposition to Respondents' Motion to Quash Subpoenas Issued Pursuant to 28 U.S.C. § 1782(a) ("Opposition Memo") at 8–16.[1] Petitioners provide no persuasive authority, however, to support the proposition that the meaning of "found" for purposes of § 1782(a) means served in a manner that would be adequate for purposes of conferring personal jurisdiction under state law. *In re Edelman,* the Second Circuit case purportedly relied on by petitioners for this proposition, is inapposite. That case simply stated that a person is "found" in a jurisdiction for purposes of § 1782(a) if he is personally served while physically present in the jurisdiction. 295 F.3d at 179. The Court of Appeals reasoned that if, under *Burnham v. Super. Ct. of California,* 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990)(plu-

rality opinion), "so-called tag jurisdiction is consistent with due process, we do not think that § 1782(a), which is simply a discovery mechanism and does not subject a person to liability, requires more." *Id.* This does not indicate an intention to make the availability of discovery under § 1782 subject to the vagaries of individual states' rules of service of process and personal jurisdiction. On the contrary, it merely represents a common sense holding that one who is personally served with process while present in a district is "found" in that district for the purpose of foreign discovery applications.

With regard to respondents Foresman and Lynch, moreover, there is no indication that they are "found" in the Southern District of New York under any definition of that term, even under state law. Foresman is not "found" in this district merely because an office manager at RenCap Securities stated, without any authority so far as the record now appears, that he was authorized to accept service on Foresman's behalf. See Supplemental Foresman Decl. ¶ 7. Similarly, Lynch is not "found" in the Southern District just because service was left with his mother at her house in North Salem, New York, which certainly was not Mr. Lynch's "dwelling place or usual place of abode." *See* N.Y. C.P.L.R. 308(2) (2007). Indeed, the connections of these

---

1. Petitioners argue, *inter alia,* that under New York law (1) Rennassance Capital was validly served by personal delivery on a Managing Director who was in New York attending a conference at the Waldorf Astoria hotel; (2) Rennaisance Capital does business in New York because: (a) the office manager at Ren-Cap Securities accepted service on Respondent Rennaissance Capital's behalf; (b) Ren-Cap is a "mere department" of Rennaissance Capital, so as to make service on a foreign corporation (Rennaissance Capital) through its domestic subsidiary (RenCap) valid; (c) the Rennaissance Group of companies, which includes both Rennaisance Capital and Ren-Cap, "holds itself out as a global enterprise with a unified marketing image"; (3) VR Capital does business in New York because (a) it "appears to be doing business out of an office located at 136 Madison Avenue"; (b) Richard Dietz's email signature lists the Madison Avenue address; (c) Gustavo Palazzi "appears to reside at a Manhattan address"; (3) Robert Foresman appears to be doing business in New York as the RenCap office manager stated that he was authorized to accept service on behalf of Foresman; (4) Stephen Lynch was validly served by delivery to his "usual place of abode," in North Salem, New York and through the United States mail. *See* Opposition Memo at 8–16.

two respondents to this district are far weaker than those that have been deemed insufficient by other courts to constitute either being "found" or "residing" for purposes of § 1782(a). *See, e.g., In re Kolomoisky,* 2006 WL 2404332 at *3 (finding petitioners had provided insufficient evidence to conclude that respondent resided in this district "under any definition of the word" even though his wife and son lived in Manhattan in an apartment in her name, a telephone line to the apartment was connected in respondent's name, respondent's passport indicated that he spent ten to twelve days in the United States earlier in the year, and respondent's wife filed a tax return in New York); *In re Microsoft,* 428 F.Supp.2d at 193 (Dutch national did not "reside" in the Southern District for purposes of § 1782 where he was a partner at Clearly Gottlieb and a member of the New York bar but resided in Brussels and worked full time at Cleary Gottlieb's Brussels office; nor was he "found" in this district as he had not been present in the district since the subpoenas were issued and was not personally served here).

As for respondents Renaissance Capital and VR Capital, petitioners have cited no case finding that a corporation resided or was found in a district where the corporation was neither incorporated nor headquartered there. *Cf., e.g., In re Kolomoisky,* 2006 WL 2404332 at *1 (respondent corporation, Renova, was located in New York City and incorporated in New York); *In re Gemeinshcaftspraxis,* 2006 WL 3844464 (S.D.N.Y.2006)(respondent, McKinsey Company, Inc., headquartered in New York, N.Y.). Professor Hans Smit, the drafter of § 1782, has explained that insofar as the word "found" is applied to corporations, "it may safely be regarded as referring to judicial precedents that equate systematic and continuous local activities with presence." Hans Smit, American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited, 25 Syracuse J. Int'l L. & Com. 1, 10 (1998). There is no allegation and Renaissance Capital or VR Capital have engaged in systematic and continuous activities in this district. Further, in *In re Application of Nokia Corp.,* 2007 WL 1729664, at *3–4 (W.D.Mich. 2007), a federal district court in Michigan found that a foreign parent corporation headquartered in Germany did not reside and was not found in the Western District of Michigan even though it owned a controlling interest in a subsidiary with headquarters in the district and had filed a separate patent infringement suit in the district in which it alleged that it had a place of business in Kentwood, Michigan.

 This leaves respondent Dietz. Deitz was personally served with a subpoena demanding his deposition and production of documents on October 27, 2007. In *In re Edelman,* 295 F.3d at 179, the Second Circuit held that if a person is personally served with a subpoena while physically present in the district of the court ordering discovery (otherwise known as "tag" jurisdiction), that person is "found" within the district for purposes of § 1782(a). Therefore, Deitz is "found" within this district. However, as to all individual respondents, including Dietz, petitioners' deposition requests run afoul of Fed.R.Civ.P. 45(c)(3)(A)(ii), which states that, unless a person is a party to the litigation or an officer of a party, he or she may not be required to "travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person." The Second Circuit has explicitly found that this rule provides "protection from burdensome travel to those persons from whom discovery is sought under § 1782(a)." *In re Edelman,* 295 F.3d at 178. Because petitioners do not even allege that respondents Dietz, Lynch or Foresman reside, are employed, or regu-

larly transact business in person within 100 miles of this district, Fed.R.Civ.P. 45(c)(3)(A)(ii) precludes these respondents being deposed here. *See In re Microsoft,* 428 F.Supp.2d at 193 n. 3 ("Even if [respondent] were 'found' in the District, he could not be compelled to appear for deposition because he is outside the 100–mile territorial limitation").

■ As to the documents requested, not only from Dietz but also from the other respondents, discovery under § 1782(a) is inappropriate here because the documents petitioners seek are located in Russia. The bulk of authority in this Circuit, with which this Court agrees, holds that, for purposes of § 1782(a), a witness cannot be compelled to produce documents located outside of the United States. *See, e.g., In re Microsoft,* 428 F.Supp.2d at 194 n. 5 (" § 1782 does not authorize discovery of documents held abroad"); *In re Nieri,* 2000 WL 60214 at *1 (S.D.N.Y.2000) (under § 1782, respondent "need only produce documents located within the United States"). *See also In re Sarrio, S.A.,* 119 F.3d 143, 147 (2d Cir.1997) (Although "on its face, § 1782 does not limit its discovery power to documents located in the United States ... there is reason to think that Congress intended to reach only evidence located within the United States"). The legislative history also supports the conclusion that the statute was intended to aid "in obtaining oral and documentary evidence in the United States," S.Rep. No. 88–1580, (1964), and was "not intended to provide discovery of evidence maintain within a foreign jurisdiction." *In re Sarrio, S.A.,* 1995 WL 598988 at *3 (S.D.N.Y. 1995). Further, Professor Smit has made it clear that the drafters of § 1782 did not intend that the statute be used to compel documents located in a foreign country for use in a foreign proceeding and that there are "potent reasons" why this is so. Smit, 25 Syracuse J. Int'l L. & Com. at 11. This is because, first, the purpose of § 1782 is to make available evidence located in the United States. "Thus, a harmonious scheme is established: Evidence in Spain is obtained through proceedings in Spain, evidence in Great Britain is obtained through proceedings in Great Britain, and evidence in the United States is obtained through proceedings in the United States." *Id.* Second, it would interfere with international courts if, for example, litigants in Spain could use § 1782 to obtain evidence located in Spain that could not be obtained through Spanish proceedings. Third, use of § 1782 for evidence located outside of the United States could turn American courts into "clearing houses for requests for information from courts and litigants all over the world in search of evidence to be obtained all over the world." *Id.*

Petitioner's rely heavily on *In re Gemeinshcaftspraxis,* 2006 WL 3844464 at *5, in which my esteemed colleague Judge Jones refused to read into § 1782(a) a requirement that the documents sought to be discovered be found in this district, base on her interpretation of the Supreme Court's recent decision in *Intel,* 542 U.S. at 260, 124 S.Ct. 2466, as an "instruction that § 1782 should not be construed to include requirements that are not plainly provided for in the text of the statute." 2006 WL 3844464 at *5. Respectfully, I disagree with that reading. *Intel* concerned a petition from Advance Micro Devices ("AMD") for certain documents produced by Intel in a private antitrust suit in a Federal District Court in Alabama and held on file by that court. Although the Court refused to read a "foreign-discoverability" requirement into § 1782(a), finding that such a requirement was not included in the text of the statute and was not supported by the legislative history, 542 U.S. at 260–62, 124 S.Ct. 2466, it implicitly assumed that evidence discoverable under § 1782(a) would be located in the United States. *See Id.* at 264, 124 S.Ct. 2466 ("nonparticipants in the foreign proceeding may be

outside the foreign tribunal's jurisdictional reach; *hence, their evidence, available in the United States,* may be unobtainable absent § 1782(a) aid") (emphasis added). Therefore, there is no reason to conclude that *Intel* stands for the proposition that § 1782 may be used to compel discovery of documents located abroad for use in foreign judicial proceedings. *See Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada,* 384 F.Supp.2d 45, 50–55 (D.D.C.2005) (finding "body of caselaw suggests that § 1782 is not properly used to seek documents held outside the United States as a general matter" and *Intel* does not compel a different result).

Lastly, even if petitioners could overcome all of the foregoing objections, this would not be a case for exercising discretion to provide the requested assistance, because the connection to the United States is slight at best and the likelihood of interfering with Dutch discovery policy is substantial. *See* Memorandum in Support of Application for an Order to Conduct Discovery for Use in a Foreign Proceeding at 17 (admitting that, under Dutch procedures, petitioners would not have access to third party discovery outside the Netherlands); Declaration of Robert Van Galen dated September 28, 2007, Exhibit A to Serio Decl., ¶ 6. *See also In re Application of Grupo Qumma, S.A.,* 2005 WL 937486 at *2 (S.D.N.Y.2005) (under *Intel,* the discoverability of the requested evidence in the foreign jurisdiction "is a relevant consideration as a district court decides how to exercise its discretion.")

Accordingly, for all the foregoing reasons, respondents' motion to quash the subpoenas is hereby granted in its entirety.

SO ORDERED.