IJK Palm LLC v. Anholt Services USA, Inc. et al.

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2021
No. 20-3963

IJK PALM LLC,
*Movant-Appellee,*

*v.*

ANHOLT SERVICES USA, INC., ANHOLT CAPITAL PARTNERS (USA),
INC., ANHOLT (USA) LLC, I. JOSEPH MASSOUD, RUDOLPH KREDIET,
*Intervenors-Appellants.*[*]

On Appeal from the United States District Court
for the District of Connecticut

ARGUED: FEBRUARY 11, 2022
DECIDED: MAY 6, 2022

Before: PARK, NARDINI, and PÉREZ, *Circuit Judges.*

---

[*] The Clerk of the Court is directed to amend the caption as set forth above.

IJK Palm LLC filed a motion in the United States District Court for the District of Connecticut (Robert N. Chatigny, *Judge*) seeking discovery under 28 U.S.C. § 1782 from several companies and individuals for use in a suit it intended to file in the Cayman Islands. After IJK filed its request under § 1782, United Oils Limited, SEZC, the company on behalf of which IJK intended to sue, entered liquidation proceedings. In the Cayman Islands, only a company's official liquidator may ordinarily sue on the company's behalf. IJK proposes three avenues through which it might nevertheless use the material it requests: (1) it could persuade the Cayman Islands liquidators to bring suit on behalf of the company in liquidation; (2) it could bring its own suit on behalf of the company if the liquidators refused; or (3) it could sue the directors of the investment vehicle through which it invested in the company in liquidation. The district court granted IJK's discovery request. We hold that IJK has not established that it is an "interested person" with respect to its first proposed suit, and that it has not established that the material it requests is "for use" in any of its proposed suits within the meaning of § 1782. Accordingly, we REVERSE the order of the district court.

---

ZACHARY R. WILLENBRINK (Daniel J. Blinka, Godfrey & Kahn, S.C., Milwaukee, WI, Frank J. Silvestri, Jr., Verrill Dana LLP, Westport, CT, *on the brief*), Godfrey & Kahn, S.C., *for Movant-Appellee.*


SEAN C. SHEELY (Qian Shen, *on the brief*), Holland & Knight LLP, New York, NY, *for Intervenors-Appellants.*

2

WILLIAM J. NARDINI, *Circuit Judge*:

In this appeal, we consider the scope of a federal district court's authority to order discovery in aid of litigation abroad. Under 28 U.S.C. § 1782, United States courts may grant discovery "for use in a proceeding in a foreign or international tribunal." The Supreme Court has counseled that the "proceeding" need not have been filed at the time a request is made so long as it is "within reasonable contemplation." The question in this case is whether a party may obtain discovery under § 1782 when there are significant procedural barriers under foreign law that might prevent the party from filing suit or using the material it receives.

IJK Palm LLC ("IJK") filed a motion in the United States District Court for the District of Connecticut (Robert N. Chatigny, *Judge*) seeking discovery under 28 U.S.C. § 1782 from several companies and individuals for use in a suit it planned to file in the Cayman Islands on behalf of a company in which it had invested. After IJK filed its

3

request, the company entered liquidation proceedings. In the Cayman Islands, only a company's official liquidators may ordinarily sue on the company's behalf. IJK proposes three avenues through which it might nevertheless use the material it requests: (1) it could persuade the Cayman Islands liquidators to bring suit on behalf of the company in liquidation; (2) it could bring its own suit on behalf of the company if the liquidators refused; or (3) it could sue the directors of the investment vehicle through which it invested in the company. The district court granted IJK's discovery request. We hold that IJK has not established that it is an "interested person" with respect to its first proposed suit, and that it has not established that the material it requests is "for use" in any of its proposed suits within the meaning of § 1782. Accordingly, we REVERSE the order of the district court.

## I.    BACKGROUND

### A.    IJK's investment in United Oils Limited, SEZC

On June 13, 2016, IJK filed an *ex parte* motion seeking discovery under 28 U.S.C. § 1782(a) [1] for a suit it purportedly intended to file in the Cayman Islands related to its indirect investment in United Oils Limited, SEZC ("UOL"). IJK invested in an investment fund, Palm Investment Partners ("PIP"), which in turn held a minority stake in UOL. UOL operated palm oil plantations in Peru.

UOL began experiencing serious financial troubles in late 2015. IJK asserts that UOL's directors knew that it would need additional debt to fund its operations, but they failed to take steps to obtain debt funding. UOL defaulted on its existing debt on February 15, 2016. One of UOL's creditors, Southern Harvest, requested leave from other

---

[1] As relevant here, that statute provides: "The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a).

5

noteholders to act as their agent in post-default negotiations with UOL. Southern Harvest proposed that debtholders would provide additional funding to cure UOL's default in exchange for 400 million new shares at $0.01 each. The proposal would have diluted IJK's equity stake in UOL from 11.15% to 1.02%. UOL's board ultimately approved a plan that resulted in less dilution, issuing 220 million new shares at $0.02 each. When IJK invested in UOL through PIP, it had done so at a price above $2.00 per share.

UOL CEO Dennis Melka owns 0.19% of UOL's equity and 15% of its debt. IJK asserts that "[m]any other board members simultaneously own equity together with a larger amount of debt." Joint App'x at 177. As a result of these alleged conflicts, IJK asserts that it intends to sue Melka and UOL's board of directors on behalf of UOL in the Cayman Islands.

## B. IJK's discovery request

On June 13, 2016, IJK filed an *ex parte* application for an order permitting it to take discovery for use in a foreign proceeding under

28 U.S.C. § 1782(a). It requested discovery from the following interrelated individuals and entities:

- Three Bermuda-based companies (collectively, the "Bermuda Entities"):

  - Kattegat Limited, a Bermuda limited partnership operating primarily in Westport, Connecticut, through its investment advisor, Anholt Services (USA), Inc. and its affiliates;

  - Anholt Investments Limited, a limited partnership registered in Bermuda operating primarily in Westport, Connecticut, as an affiliate of Anholt Services (USA), Inc.; and

  - Southern Harvest Partners, LP, a limited partnership registered in Bermuda operating primarily in Westport, Connecticut, as an affiliate of Anholt Services (USA), Inc.

7

- Three U.S.-based companies:

  o Anholt Services (USA), Inc., a corporation registered in Delaware with its principal place of business in Westport, Connecticut;

  o Anholt Capital Partners (USA), Inc., a corporation registered in Delaware with its principal place of business in Westport, Connecticut; and

  o Anholt (USA) LLC, a limited liability company registered in Delaware operating primarily in Westport, Connecticut, as an affiliate of Anholt Services (USA), Inc.

- And two Connecticut residents:

  o I. Joseph Massoud, managing director of Anholt Services (USA), Inc., who resides in Westport, Connecticut; and

o Rudolph Krediet, a resident of Norwalk, Connecticut, who is a partner in Anholt Services (USA), Inc. and who is in charge of managing Southern Harvest Partners, LP .

IJK alleged that Kattegat owns the four "Anholt" entities and operates through them. In turn, the Anholt entities own Southern Harvest.

The district court referred IJK's application to a magistrate judge (Donna F. Martinez, *Magistrate Judge*), who granted the application in full. She reasoned that (1) the target entities and individuals were all "found" in Connecticut; (2) IJK reasonably contemplated filing suit against UOL in the Cayman Islands using the documents it obtained through the request; and (3) IJK was an "interested person" under the statute as a shareholder in UOL. The magistrate judge then balanced the discretionary factors articulated in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65

9

(2004), concluding that they weighed in favor of granting IJK's request.

Five targets of IJK's application moved to intervene and to vacate the magistrate judge's order: Anholt Services (USA), Inc.; Anholt Capital Partners (USA), Inc.; Anholt (USA) LLC; I. Joseph Massoud; and Rudolph Krediet (collectively, "Intervenors"). The Intervenors argued that IJK had not established that it met any of the statutory factors under § 1782 and that the balance of the discretionary factors under *Intel* weighed against granting discovery. They also explained that UOL had entered liquidation proceedings in the Cayman Islands. As a result, IJK's application was moot because, under Cayman law, only the court-appointed liquidator could pursue derivative claims on behalf of UOL. Thus, they argued, IJK could no longer assert that the requested discovery was "for use" in a derivative suit on UOL's behalf.

IJK responded that the case was not moot because it could provide the requested discovery to the liquidators to persuade them to bring a claim, or it could bring a claim on its own if the liquidators refused. IJK filed a letter from the Cayman Islands liquidators, which explained that, under Cayman law, they are "empowered to investigate the causes of the failure of UOL and the promotion, business, dealings and affairs of the Company and make such reports to the Court as they think fit." Joint App'x at 1342. The liquidators reported that they were not financially able to pursue discovery through § 1782 on their own and would "be grateful if the material recovered under any action undertaken by IJK Palm LLC would be available" for their review. *Id.* IJK also argued that it was contemplating bringing a derivative action against PIP's directors in which it could use the requested discovery.

The Intervenors in turn filed a declaration by their Cayman counsel asserting that the ordinary procedure would be for interested

11

parties like IJK to fund the liquidator's derivative suit rather than bringing their own.

The magistrate judge issued a report and recommendation, again recommending that the court grant IJK's application for discovery. She concluded that IJK's suit was "within reasonable contemplation" notwithstanding UOL's liquidation because IJK had pointed to a case from the Cayman Islands Grand Court's Financial Services Division suggesting that shareholders may still bring a derivative suit on behalf of a company in liquidation if the liquidator is unwilling to do so. The magistrate judge explained that the Cayman liquidators had filed a declaration supporting IJK's application for discovery and noting that they lacked the funding to bring such an action independently. Finally, the magistrate judge recommended holding that IJK was an "interested person" under the statute because it was a shareholder in UOL through PIP. With

respect to the *Intel* factors, the magistrate judge again concluded that the balance tipped in favor of granting IJK's application.

The Intervenors filed objections to the magistrate judge's report and recommendation, but the district court adopted the magistrate judge's recommended ruling over their objections. First, the court explained that IJK was an "interested person" under the statute even if the Cayman suit could be brought only by the liquidator because the record supported that the requested discovery could persuade the liquidator to pursue a derivative claim and because the liquidator had expressed an interest in investigating possible claims. Even if IJK was not an interested person with respect to an action against UOL, it was an interested person with respect to its own potential derivative suit against PIP's directors.

Next, the district court concluded that the Intervenors were all "found" within the district as Connecticut residents or corporations operating primarily in the state. And the court found that the

13

Intervenors had not "seriously disputed IJK Palm's allegations that the Bermuda entities are shell corporations operated by Mr. Massoud in Connecticut, such that the exercise of general jurisdiction would be appropriate as to them." Special App'x at 2.

Finally, the court addressed the Intervenor's sole argument with respect to the discretionary *Intel* factors—that IJK's request was an attempt to circumvent Cayman law. The court concluded that IJK had shown its request was necessary to allow it to satisfy the heightened pleading standard that a Cayman court would apply to the actions. As a result, the district court granted IJK's application in full. The Intervenors timely appealed.

## II.    DISCUSSION

Section 1782(a) of Title 28 of the United States Code authorizes federal district courts to order discovery in aid of foreign proceedings. The party seeking discovery must establish three statutory prerequisites: (1) the person or entity from whom discovery is sought

14

"resides" or is "found" in the district where the application is made; (2) the requested material is "for use" in a foreign proceeding; and (3) "the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

Once a court determines that the statutory prerequisites are met, it is "free to grant discovery in its discretion." *Id.* Courts exercising their discretion must take "into consideration the twin aims of the statute, namely, providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015) (internal quotation marks omitted). The Supreme Court has also laid out factors that "bear consideration" by district courts:

15

(1) Whether the "person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent" because a foreign tribunal presumably has authority to order discovery on its own;

(2) "[T]he nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

(3) Whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4) Whether the requests are unduly intrusive or burdensome.

*Intel*, 542 U.S. at 264–65.

Our review of a district court's decision to grant § 1782 discovery involves two inquiries: "whether (1) as a matter of law, the District Court erred in its interpretation of the language of the statute; and (2) if not, whether the District Court's decision to grant discovery on the facts before it was in excess of its discretion." *In re Application for an Ord. Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proc.*, 773 F.3d 456, 459 (2d Cir. 2014) (internal quotation marks and alterations omitted). We review the district court's construction of the statute at the first step *de novo*. *See Certain Funds*, 798 F.3d at 117. We review the district court's decision at the second step for abuse of discretion. *In re Application*, 773 F.3d at 459. "A district court is said to 'abuse its discretion' if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *Id.* at 459–60 (internal quotation marks and alterations omitted). Because we conclude that IJK has not

17

established that it is an "interested person" or that the materials it requests are "for use" in a foreign proceeding, we do not address the remaining statutory factor or the district court's discussion of the discretionary factors under *Intel*.

IJK asserts it is an "interested person" and the information it requests is "for use" in three possible foreign proceedings. First, IJK could assist the liquidators in pursuing an action against UOL's CEO and directors. Second, as it asserted in its initial application, IJK could pursue a double-derivative action against UOL's CEO and directors through PIP if the liquidators refuse to file suit. Third, IJK could use the discovery in its own derivative action against a director of PIP. We hold that IJK has not established that it meets the statutory requirements under § 1782 with respect to any of its proposed suits.

## A.    Suits against UOL's CEO and directors

IJK argues first that it intends to bring suit on behalf of UOL against the company's CEO and directors. The parties agree that, when a company is in liquidation under Cayman law, only the

18

liquidators may ordinarily bring suit on behalf of the company in the first instance. IJK argues that Cayman courts recognize an exception to this rule. In the Cayman case, *In re Sphinx* [2014] (2) CILR 131, the Financial Services Division of the Cayman Islands Grand Court explained that, once a company is in liquidation, the "proper plaintiff" is the liquidator, "who should, if willing, sue in the name of the company . . . ." *Id.* at 144. If the liquidator is unwilling, however, "the aggrieved shareholder should sue in the name of the company subject to the approval of the court." *Id.* IJK thus posits two potential paths to suit. First, it could present the information it gains through its § 1782 application to the official liquidators in UOL's Cayman Islands liquidation who could in turn sue UOL's conflicted CEO and directors on behalf of the company. Second, if the liquidators refuse to sue, IJK could bring its own derivative suit on behalf of PIP, which could in turn sue on behalf of UOL. Neither path is sufficiently definite to support IJK's application under § 1782.

### 1. Suit by UOL's liquidators

IJK has not established that the information it requests is "for use" by the liquidators, or that it would be an "interested person" with respect to such a suit.

Under § 1782, a movant seeking discovery need not show that the "foreign proceeding" on which it relies is pending or even imminent in order to meet the "for use" requirement. *Intel*, 542 U.S. at 258–59. But the proceeding must be "within reasonable contemplation." *Id.* at 259. This requires a petitioner to show "reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *Certain Funds*, 798 F.3d at 123 (citation omitted). While we have not delineated "what precisely an applicant must show to establish such indications . . . [a]t a minimum, a § 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Id.* at 123–24. And "a Section 1782 applicant must establish that [it] has the *practical ability* to inject the

20

requested information into [the] foreign proceeding" that it contemplates. *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017) (emphasis added).

IJK has failed to establish that the liquidators' lawsuit against UOL's CEO and directors is "within reasonable contemplation." *Intel*, 542 U.S. at 259. IJK filed a letter from the liquidators in the district court, which explained that the liquidators had "no objection" to IJK's application under § 1782. Joint App'x at 1343. The letter also stated that the liquidators could not bring suit themselves "given the impecuniosity of the UOL estate." *Id.* at 1342. Nowhere have the liquidators stated that they have any plan to bring suit in the Cayman Islands. The letter instead suggests that the liquidators would use the requested material in the liquidation proceedings themselves.[2] At

---

[2] IJK implies that the liquidation proceedings themselves are another avenue by which it might use the material it seeks. But the liquidators filed an application with the Grand Court of the Cayman Islands to end the liquidation

most, the liquidators' letter supports an inference that they would *consider* suing on behalf of UOL depending on the contents of the evidence that IJK seeks. But discovery material is not "for use" in a foreign proceeding if it must first be used to persuade a third party to initiate that proceeding. *See Certain Funds*, 798 F.3d at 121 ("Even assuming that the Funds have the ability to submit information to the Delegate, who can then decide whether or not to use that information, that does not establish that the information is 'for use' in a foreign proceeding; it establishes, at best, that the Funds can furnish information *in the hope* that it might be used.").

IJK urges that its situation is analogous to the movant in *Intel*, 542 U.S. at 246. There, the movant sought discovery under § 1782 of material that it planned to present to the Directorate-General for

---

proceedings by dissolving UOL, which they withdrew only at IJK's request. Thus, it is not clear what, if any, additional liquidation proceedings have yet to occur beyond the potential suit against UOL's directors that IJK hopes the liquidators will bring.

Competition (DG-Competition) of the Commission of the European Communities (European Commission). *Id*. The DG-Competition enforces European competition laws on behalf of the European Commission. *Id.* at 254. When it receives a complaint, it is responsible for conducting a preliminary investigation and making a recommendation about whether to pursue the complaint further. *Id.* The European Commission's final decision is subject to judicial review. *Id*. The question then arose whether the European Commission was a "tribunal" within the meaning of the statute. *Id.* at 257. The Supreme Court held that it was, explaining that § 1782 "authorizes . . . a federal district court to provide assistance to a complainant in a European Commission proceeding that leads to a dispositive ruling, *i.e.,* a final administrative action both responsive to the complaint and reviewable in court." *Id.* at 255.

IJK argues that, like the movant in *Intel*, it seeks discovery that it intends to submit to the liquidators, who may in turn sue UOL's

23

CEO and directors. But the liquidators in this case are far different from the DG-Competition in *Intel*. In *Intel*, the movant's complaint to the DG-Competition triggered an investigation and recommendation to the European Commission. *Id.* at 255. The Supreme Court held that that process itself comprised a "foreign proceeding" within the meaning of § 1782. *Id.* at 258. Here, no "proceeding" would begin if IJK presented materials to the liquidators. The "proceeding" on which IJK relies is the potential action that the liquidators would have discretion to file in a Cayman court. The mere opportunity to present material to a party to a potential future lawsuit does not satisfy the requirement of § 1782 that the material be "for use" in a foreign proceeding. Accordingly, IJK has not carried its burden to show that the material it requests is "for use" in a hypothetical suit brought by the liquidators.

Even if IJK could satisfy the "for use" requirement through the liquidator's potential suit, it has not established that it would be an

24

"interested person" with respect to that suit. "The text of § 1782(a), 'upon the application of any interested person,' plainly reaches beyond the universe of persons designated 'litigant.'" *Intel*, 542 U.S. at 256. But we have explained that "*financial* interest in the outcome of the foreign proceedings alone" is insufficient "to confer 'interested person' status under the statute." *Certain Funds*, 798 F.3d at 119. And the ability "to pass on information to parties in a proceeding, without more, cannot confer 'interested person' status." *Id.* at 120. On the other hand, when a person has "an established *right* to provide evidence and have the party [to the foreign proceeding] consider it . . . or a recognized relationship, such as that of an agent and principal, [that] may be sufficient to make an otherwise stranger to the proceeding an 'interested person.'" *Id.* (internal citation and quotation marks omitted).

IJK argues that it is an "interested person" under the statute because it has a "'mechanism' through which [it] could provide the

discovery to the liquidators." IJK Br. at 45. Again, though, the opportunity to present evidence to a party to a potential lawsuit does not render a movant under § 1782 an "interested party." The liquidators' letter states that they are "empowered"—not required—to "investigate the causes of the failure of UOL . . . and make such reports to the Court as they think fit." Joint App'x at 1342. And they state that they would be "grateful if the material recovered . . . by IJK . . . would be available for [their] review." *Id.* The liquidators have not provided IJK with any assurance that they will act on any information that they receive. By contrast, in *Intel*, the movant was an "interested person" because its complaint triggered a mandatory, formal process beginning with an investigation by the DG-Competition and culminating in a judicial review of the European Commission's final action. *Intel*, 542 U.S. at 254–56. The complainant was vested with "significant procedural rights," including the right to submit information to the DG-Competition and to "seek judicial

26

review of the Commission's disposition of a complaint." *Id.* at 255. Here, the liquidators' general indication of interest in the material that IJK might obtain is not sufficient to render IJK an "interested person" with respect to the suit that it hopes the liquidators will decide to bring.

### 2. IJK's double-derivative suit

IJK next argues that it may use the material it obtains through its § 1782 request in a suit it could bring on behalf of PIP, which would in turn sue UOL's CEO and directors on behalf of that company.

It is undisputed that IJK would be an "interested person" with respect to this hypothetical suit. Indeed, there is "[n]o doubt litigants are included among, and may be the most common example of, the interested persons who may invoke § 1782." *Intel*, 542 U.S. at 256 (quotation marks and alterations omitted). IJK's theory falters, however, because it has not established that it has a sufficiently definite path to bring its proposed double-derivative suit. As a result,

27

it cannot show that the requested discovery is "for use" in a foreign proceeding.

Both parties acknowledge that the Cayman decision in *Sphinx* illustrates that, when a company is in liquidation, the "proper plaintiff" in a suit on behalf of the company is the court-appointed liquidator. [2014] (2) CILR 144. If the liquidator refuses to sue, then an "aggrieved shareholder" may instead sue in the name of the company with approval of the court. *Id.* Therein lie two problems for IJK.

First, *Sphinx* makes clear that the liquidators are the appropriate plaintiffs to pursue claims on behalf of a company in liquidation in the first instance. In their letter, the liquidators take no position on the possibility of pursuing a claim against UOL's CEO and directors. They state only that they are unable to pursue their own action for discovery under § 1782 due to "the impecuniosity of the UOL estate." Joint App'x at 1342. As discussed above, IJK would

not be an "interested party" with respect to the liquidators' potential suit. If the liquidators decide to sue, IJK has identified no formal mechanism by which it could inject the material it seeks into that proceeding. Thus, IJK's ability to use the material it seeks is contingent on the liquidators' deciding *not* to sue on their own. IJK has not provided a sufficient basis to evaluate the likelihood of that eventuality.

Second, *Sphinx* identifies substantial steps that IJK would have to take before it could bring its proposed suit. Even if the liquidators declined to pursue an action on their own, IJK would need to seek leave of the Cayman court to proceed once the liquidators refused. IJK's chances of success in that endeavor are uncertain at best. As the Intervenors point out, the *Sphinx* court considered only a derivative action, not the type of double-derivative suit that IJK proposes.

In sum, there are significant procedural hurdles that IJK would have to clear before bringing its suit against UOL's CEO and directors

29

in the Cayman Islands. Where a movant seeks discovery for a suit that has not yet been filed, it must "provide sufficiently reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 101 (2d Cir. 2020) (internal quotation marks omitted). Thus, if a movant's ability to initiate a proceeding depends on some intervening event or decision, it must provide an objective basis on which to conclude that the event will occur or the requisite decision will be favorable. Here, IJK has not provided an objective basis on which to conclude that it can bring its double-derivative suit against UOL's CEO and directors. Accordingly, it has not carried its burden to show that the proposed suit is "within reasonable contemplation," and it is not entitled to discovery under § 1782.

We have explained that "it is not fatal" to an application that the movant "lacks a claim for relief before the foreign tribunal, whether for damages or otherwise." *In re Accent Delight Int'l Ltd.*, 869

30

F.3d at 132. A district court's focus in considering a request under § 1782 is not on the merits of the proposed claim, but on the movant's "practical ability to inject the requested information into a foreign proceeding." *Id.* Thus, a district court may need to undertake a limited foray into foreign law to assess the procedural mechanism by which a movant may inject the discovery it seeks into foreign proceedings. Here, IJK must clear a series of procedural hurdles under Cayman law before it can present any evidence to a Cayman court in a suit against UOL's CEO and directors. It has not provided a sufficient basis to conclude that it would be able to do so.

## B. Suit against PIP's directors

IJK next posits a third avenue by which it might use the discovery it seeks: a derivative suit against PIP's directors. Before the district court, IJK reported that "in the weeks since [it] filed its § 1782 Application, [it] ha[d] learned more facts regarding" the actions of

PIP's officers and directors, and as a result, "intends to file suit" against them. Joint App'x at 1187–88.[3]

As a litigant in the proceeding, IJK would certainly be an "interested person" within the meaning of the statute. *See Intel*, 542 U.S. at 256. But IJK has not established that the discovery it seeks would be "for use" in a suit against PIP's directors because it has not pointed to objective indicia that the action is being contemplated. *Certain Funds*, 798 F.3d at 123.

IJK's claims with respect to its proposed suit against PIP's directors are vague and undeveloped. It states that one PIP director "inexplicably delayed taking several actions, damaging PIP and, thus, IJK Palm." Joint App'x at 1188. It offers no suggestion as to what

---

[3] The district court relied on IJK's proposed suit against PIP's directors in granting its request for discovery. Accordingly, we assume on appeal that the late addition of a fallback basis for IJK's § 1782 application was proper. *But see Certain Funds*, 798 F.3d at 124 ("[T]he relevant question is whether *at the time the evidence is sought*, the evidence is eventually to be used in a foreign proceeding. In other words, we assess the indicia of whether the contemplated proceedings were within reasonable contemplation at the time the § 1782 application was filed." (cleaned up)).

those "actions" might have been, nor does it further elucidate its legal theory. The only concrete step IJK has taken toward initiating its proposed suit is to obtain funding for, and to retain, counsel. That simple action, we have held, is not sufficient to make an objective showing that the planned proceedings are within reasonable contemplation. *See Certain Funds*, 798 F.3d at 124.

III.  CONCLUSION

In sum, we hold as follows:

(1)  The opportunity to present material to a party to a potential lawsuit does not satisfy the requirement of § 1782 that the material be "for use" in a foreign proceeding. Here, even if the liquidators agree to consider the evidence that IJK obtains, there is an insufficient basis to conclude that they would sue UOL's CEO and directors, or that they would otherwise use the information that IJK provided in a foreign proceeding.

33

(2) The anticipated ability to pass information to one party to a suit, without more, also does not render a movant under § 1782 an "interested person" with respect to that suit. Here, IJK's only direct interest in the liquidators' potential suit is financial, which is insufficient to meet the requirement to be an "interested person" within the meaning of § 1782.

(3) The movant must establish that it has the practical ability to inject the requested information into a foreign proceeding, even if doing so would be contingent on an intervening event or decision. IJK has not provided a sufficient basis to conclude that it could bring a double-derivative suit on behalf of UOL in the Cayman Islands. As a result, the requested discovery material is not "for use" with respect to that potential double-derivative suit.

34

(4)     A movant under § 1782 must show objective indicia that the proceedings on which it relies are within reasonable contemplation.  Merely retaining counsel and sketching a vague outline of a proposed suit does not meet that requirement.  IJK has thus failed to meet its burden to establish that its proposed suit against PIP's directors is within reasonable contemplation, and therefore that the requested discovery material is "for use" with respect to such suit.

We therefore REVERSE the order of the district court granting IJK's application for discovery under 28 U.S.C. § 1782.