# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 25-7029**

**September Term, 2025**

FILED ON: OCTOBER 17, 2025

QATAR NATIONAL BANK AND QATAR CHARITY,
APPELLEES

v.

PERLES LAW FIRM, P.C.,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:24-mc-00035)

---

Before: PAN and GARCIA, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and the briefs of the parties. *See* D.C. CIR. R. 34(j). The Court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons stated below, it is

**ORDERED** and **ADJUDGED** that the district court's order be **AFFIRMED.**

\*     \*     \*

This case concerns a 28 U.S.C. § 1782 discovery application by Qatar National Bank and Qatar Charity (collectively, the "Qatar Entities") to identify those responsible for allegedly forging a wire transfer record (the "Transfer Record") used against them in litigation. Because Perles Law Firm's ("Perles") arguments against the discovery request lack merit, we affirm.

## I

In 2022, Perles filed a lawsuit against the Qatar Entities in the U.S. District Court for the Southern District of Florida on behalf of the family members and estate of deceased journalist Steven Sotloff. The suit alleged that the Qatar Entities had financed Sotloff's execution by the terrorist group ISIS. That suit was based largely on the Transfer Record, which purportedly documented a payment from Qatar Charity to ISIS.

In June 2023, the Florida court entered a protective order. The order permitted the parties to designate material as protected and strictly limited access to such material and to "any testimony, conversations, or presentations by [p]arties or their [c]ounsel that might reveal" protected information. *Sotloff v. Qatar Charity*, No. 22-cv-80726, at 4 (S.D. Fla. June 23, 2023). Section 8 of the order addressed subpoenas and other litigation. *Id*. at 12. It required notice and cooperation if protected material was sought in other proceedings and envisioned that a different court might order disclosure of such material. *Id*.

After the protective order issued, Perles produced a redacted version of the Transfer Record for the Qatar Entities. The document purports to be issued by Ziraat Bank in Istanbul. The Qatar Entities identified signs that the document was forged. Ziraat Bank also reported to the Qatar Entities that it could not locate any record of the alleged transfer. After the Qatar Entities flagged these irregularities, Perles conducted its own investigation. Perles met with fact witnesses in Paris, France, including one individual (the "Anonymous Source") who allegedly witnessed the wire transfer transaction. Perles ultimately conceded that it could not authenticate the Transfer Record, and the Florida court granted the parties' joint motion to dismiss the suit with prejudice.

The Qatar Entities now seek to identify those responsible for the Transfer Record—which they argue is an obvious forgery—given the legal and reputational costs it has caused. Because they have reason to believe that the Anonymous Source resides in France, they retained a French law firm. That firm advised the Qatar Entities that French law would provide specific civil and criminal remedies against the alleged forgers, confirmed that the applicable limitations periods had not expired, and noted that French courts accept evidence obtained through discovery conducted in U.S. courts.

On March 12, 2024, the Qatar Entities filed in the U.S. District Court for the District of Columbia a request for discovery from Perles to identify who created or supplied the Transfer Record. The request was made pursuant to 28 U.S.C. § 1782, which empowers federal district courts to order discovery in the United States "for use" in foreign proceedings. The Qatar Entities proposed two subpoenas: one for documents sufficient to identify the Anonymous Source and others involved, and another for depositions on the Transfer Record's provenance.

On February 10, 2025, the district court granted the discovery application. *In re Qatar Nat'l Bank*, 2025 WL 445188 (D.D.C. Feb. 10, 2025). Perles appealed, arguing that (1) issue preclusion arising from the protective order bars the requested discovery; (2) the "for use" requirement of Section 1782 is not satisfied; and (3) the district court abused its discretion in granting the discovery request.

## II

We review issue preclusion determinations de novo. *Aenergy, S.A. v. Republic of Angola*, 123 F.4th 1351, 1356 (D.C. Cir. 2024). Discovery rulings, including the district court's weighing of Section 1782's discretionary factors, are reviewed for abuse of discretion. *In re Application for an Ord. Pursuant to 28 U.S.C. § 1782*, 473 F. App'x 2, 3–4 (D.C. Cir. 2012) (per curiam). Within that rubric, we review any legal questions de novo, *Yousuf v. Samantar*, 451 F.3d 248, 251 (D.C. Cir. 2006), and we review the district court's factual findings for clear error, *Armstrong v. Geithner*, 608 F.3d 854, 857 (D.C. Cir. 2010).

2

**A**

Perles contends that issue preclusion arising from the Florida protective order bars the Qatar Entities from obtaining discovery about the Transfer Record. Its primary argument centers on witness safety. Both this litigation and the Florida proceedings, Perles asserts, involve the same fundamental question: Whether the identities of individuals associated with the Transfer Record should be protected for safety reasons.

Issue preclusion requires that (1) "the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case"; (2) "the issue must have been actually and necessarily determined" in the earlier case; and (3) "preclusion in the second case" would result in no "basic unfairness" to the bound party. *Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 301 (D.C. Cir. 2015) (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)).

As the district court explained, Perles's argument flunks the first requirement. *In re Qatar Nat'l Bank*, 2025 WL 445188, at *3. For the Florida protective order, the operative question was who exactly could access certain materials, including the Transfer Record, within the Sotloff case. Here, by contrast, the question is whether the Qatar Entities may obtain discovery about the Transfer Record's provenance for use in foreign proceedings under Section 1782's requirements. Determining how to regulate access to documents in one case is simply not the same as determining whether the underlying facts about the creation of one of those documents may be discovered for use in another proceeding.

The record underscores this mismatch in at least two respects. First, the Florida protective order's "other litigation" clause expressly contemplates that information protected by the order might be subpoenaed and ordered disclosed in a different proceeding. Second, the timing of these orders confirms that the issues differ: When the Florida court entered its order, neither the court nor the parties had identified the Transfer Record as a potential forgery; that later-emerging context further confirms the "same issue" was not presented there.

Perles's safety-focused framing also undermines its position. Although witness safety was a central concern in the Florida proceedings, it is merely one of several discretionary considerations in the Section 1782 analysis, as we discuss below. *See infra* Part II.C. Because this litigation and the Florida court's issuance of the protective order plainly do not involve the same issue, there is no need to reach the other issue preclusion factors.

**B**

Section 1782 discovery may be granted if the applicant makes three showings: (1) the person from whom discovery is sought "resides or is found" within the district; (2) the discovery is "for use in a proceeding in a foreign or international tribunal"; and (3) the application is made by an "interested person." 28 U.S.C. § 1782(a).

Perles disputes only the "for use" requirement. Perles argues that the Qatar Entities fail that requirement because they cannot concretely identify potential defendants, have failed to commit to filing in a specific foreign forum, have not stated with sufficient specificity the nature of the claims they may seek, and cannot demonstrate they will initiate proceedings within a

reasonable time frame. These arguments lack merit. The Supreme Court has held that the "for use" element does not require a discovery applicant to identify a "pending" or "imminent" case in which it will use the sought-after information; rather, the "for use" element is satisfied when the applicant shows such a proceeding is in "reasonable contemplation." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004).

The district court appropriately found that the Qatar Entities made that showing. The Qatar Entities presented substantial concrete evidence that they are actively "contemplat[ing]" litigation against potential forgers. Because their investigation indicates—based on statements from Perles itself—that one relevant individual may reside in France, the Qatar Entities have retained French counsel. That counsel has analyzed the viability of specific French-law claims based on the known facts, verified that limitations periods have not expired, and confirmed that French courts are receptive to Section 1782 evidence. The primary remaining obstacle to filing suit is knowing whom to sue, which is precisely why the Qatar Entities have requested discovery. As the district court noted, the Qatar Entities have committed to filing suit "'immediately' upon receiving the necessary information." *In re Qatar Nat'l Bank*, 2025 WL 445188, at *4. Indeed, Perles offers no viable path for the Qatar Entities to advance their litigation plans without this discovery.

Although published decisions applying *Intel*'s "reasonable contemplation" standard remain limited, this case presents no close question. Where, as here, the discovery applicant has taken every plausible step either party can identify to advance its litigation plans without the sought-after discovery, and the applicant commits to filing as soon as possible once the requisite information is in hand, the litigation is plainly in "reasonable contemplation." *Cf., e.g., Certain Funds, Acct. and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 124 (2d Cir. 2015) (holding that applicants "must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye"). Moreover, courts have recognized that parties may use Section 1782 discovery to identify unknown defendants when the circumstances otherwise show that foreign litigation is reasonably contemplated. *See e.g., In re Pishevar*, 2023 WL 2072454, at *2 (D.D.C. Feb. 17, 2023); *In re Will Co., Ltd.*, 2021 WL 5322653, at *1–2 (N.D. Cal. Nov. 16, 2021). Perles's challenge to the "for use" requirement therefore fails.

## C

When Section 1782's requirements are satisfied, the decision to grant discovery remains discretionary. The Supreme Court in *Intel* articulated four factors to guide district courts in exercising that discretion. *See Intel*, 542 U.S. at 264–65. Perles argues that the district court abused its "considerable discretion" in weighing those factors. *See In re Application*, 473 F. App'x at 3. We disagree.

The first *Intel* factor asks whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "the need for Section 1782(a)" discovery is generally more "apparent" when the discovery is sought from someone who is *not* participating in that proceeding. *Intel*, 542 U.S. at 264. Perles argues that the Qatar Entities, at bottom, are seeking discovery from the Sotloffs, and that the Qatar Entities may use the discovery to sue them. But Perles provides no basis to doubt the district court's reasonable determination that "[t]he Qatar Entities clearly seek discovery from *the Perles Firm*, not the Sotloffs, in order to identify the

4

alleged forgers and bring a suit against them."[1]  *In re Qatar Nat'l Bank*, 2025 WL 445188, at \*4.

The second *Intel* factor asks in pertinent part whether the relevant foreign tribunal is receptive to Section 1782 discovery.  *Intel*, 542 U.S. at 264.  The Qatar Entities provided a declaration from their French counsel stating that French courts are receptive to such discovery.  Perles does not contest that assertion.  Instead, it insists that the Qatar Entities must commit to filing in France before this factor can be intelligibly assessed.  Perles provides no basis in the statute or caselaw for imposing such an obligation, which would in any event be in tension with *Intel*'s approach to the "for use" requirement addressed above.  Given the identity-confirming nature of the requested discovery, the district court correctly inquired into the practices of courts in the jurisdiction where the Qatar Entities are most likely to file suit, rather than demanding that the Qatar Entities somehow commit to filing their contemplated suit in a specific jurisdiction before confirming the identity of the alleged forgers.  *See In re Qatar Nat'l Bank*, 2025 WL 445188, at \*5.

The third *Intel* factor evaluates "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 265.  Perles argues that the Section 1782 application evades the work-product doctrine by compelling disclosure of everyone the firm contacted while investigating the transfer record, and that compliance would endanger witnesses and others in Perles's network.  Neither argument establishes that the district court abused its discretion.  First, the district court reasonably determined that the requests are intended to identify information without exposing protected work product.  *In re Qatar Nat'l Bank*, 2025 WL 445188, at \*6.  Should specific work product objections arise in responding to the subpoena, Perles may raise and litigate those objections in the district court "in accordance with the Federal Rules of Civil Procedure."  28 U.S.C. § 1782(a); *see also* FED. R. CIV. P. 26(b)(3).  Second, the district court reasonably determined that Perles's safety concerns were too speculative and untethered to the Qatar Entities to justify a denial.  *In re Qatar Nat'l Bank*, 2025 WL 445188, at \*6.

The fourth *Intel* factor addresses whether the requested discovery is "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 265.  The district court reasonably determined that the subpoenas are narrowly tailored to investigate the Transfer Record's creation, chain of custody, and related identity facts, and found the burden manageable.  *In re Qatar Nat'l Bank*, 2025 WL 445188, at \*6.

In short, the district court applied the correct legal framework and reached a reasonable conclusion under *Intel*; nothing in Perles's objections approaches a showing that the court committed legal error or otherwise strayed beyond the bounds of its discretion.

\*     \*     \*

For the foregoing reasons, the district court's order is affirmed.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published.  The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely

---

1 Perles also argues that the first *Intel* factor weighs against discovery because the Qatar Entities might sue Perles itself.   That argument was not raised in the district court and is therefore forfeited.

petition for rehearing or rehearing *en banc*.   *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

**Per Curiam**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:    /s/
Michael C. McGrail
Deputy Clerk

6